UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TERRANCE RICHARDSON and
ANTHONY DOWELL,

        Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

        Defendants.
_____/

Case No. 1:22-cv-854

Hon. Hala Y. Jarbou

**OPINION**

     This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint as frivolous and for failure to state a claim.

**Discussion**

**I.**    **Factual Allegations**

     **A.**    **Terrance Richardson**

     Plaintiff Richardson is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

Plaintiff is incarcerated following his June 30, 2010, Wayne County Circuit Court bench trial convictions on several charges, including first-degree premeditated murder and use of a firearm during the commission of a felony (felony-firearm). *See* Register of Actions, *People v. Richardson*, No. 10-000172-01-FC (Wayne Cnty. Cir. Ct.), https://cmspublic.3rdcc.org/default.aspx (select "Criminal Case Records," search Last Name "Richardson," First Name "Terrance," Date of Birth "2/28/1976," select Case Number "10-000172-01-FC") (last visited Oct. 12, 2022); *see also* MDOC Offender Tracking Information Service (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=255998 (last visited Oct. 12, 2022). The sentences for those two offenses yielded a controlling consecutive string of two years for felony-firearm and life imprisonment for first-degree murder.

Plaintiff Richardson sues Michigan Governor Gretchen Whitmer, MDOC Director Heidi Washington, and MDOC Parole Board Chair Brian Shipman. Plaintiff Richardson complains that when he was convicted of first-degree murder, the statutory penalty was life imprisonment. Years later, during 2014, the statutory penalty was changed to life imprisonment without parole. Now he finds himself subject to that enhanced penalty, a situation he contends is unconstitutional for several reasons.

### B. Anthony Dowell

Plaintiff Dowell is also presently incarcerated with the MDOC at LCF. Plaintiff Dowell is incarcerated following his November 21, 2003, Oakland County Circuit Court jury trial conviction on the charge of first-degree premeditated murder. *See* Register of Actions, *People v. Dowell*, No. 2003-190533-FC (Oakland Cnty. Cir. Ct.), https://courtexplorer.oakgov.com/OaklandCounty (select "Circuit" for "Court Type," search last name "Dowell," first name "Anthony," select Case Number "2003-190533-FC") (last visited Oct. 12, 2022); *see also* OTIS, https://mdocweb.state.

mi.us/otis2/otis2profile.aspx?mdocNumber=270700 (last visited Oct. 12, 2022). Plaintiff Dowell was sentenced to life imprisonment.

Plaintiff Dowell sues the same Defendants and presents the same claims as Plaintiff Richardson.

### C. Penalty for First Degree Murder in Michigan

Plaintiffs suggest that the penalty for first-degree murder changed when the Michigan legislature changed the first-degree murder statute during March of 2014. If one only looks at the first-degree murder statute, Plaintiffs' claims appear to have some merit.

Prior to the March 2014 amendment—and at the time Plaintiffs committed and were tried for their crimes—Mich. Comp. Laws § 750.316 provided that "a person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life . . . ." After March 2014, the statute provided that "a person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life ***without eligibility for parole*** . . . ." Mich. Comp. Laws § 750.316 (emphasis added).

Nonetheless, even though the legislature added the phrase "without eligibility for parole" to the first-degree murder statute, there has not been any other possible sentence for that offense for decades. Prior to March of 2014, however, that limit was reflected not in the first-degree murder statute, but in the parole statute. Section 791.234 of the Michigan Compiled Laws states, that "[a] prisoner sentenced to imprisonment for life for any of the following is not eligible for parole . . .: (a) First degree murder in violation of section 316 of the Michigan penal code . . . ." Mich. Comp. Laws § 791.234(6). That statutory section has always excluded prisoners convicted of first-degree murder from parole, apparently as long as there has been parole. *See, e.g.*, *Moore v. Buchko*, 154 N.W.2d 437, 447 (Mich. 1967); *People v. Fox*, 20 N.W.2d 732, 732–33 (Mich. 1945).

3

Both Plaintiffs were well aware that their first-degree murder convictions subjected them to life imprisonment without the possibility of parole. Plaintiff Richardson's sentencing judge stated: "It is the sentence of this Court[,] Homicide Murder in the First Degree, Premeditated, you are hereby remanded to the Michigan Department of Corrections to serve a mandatory life in prison without possibility of parole." Sentencing Tr. at 6, *People v. Richardson*, No. 10-0172-01 (Wayne Cnty. Cir. Ct. July 27, 2010), *available at Richardson v. Burt*, No. 2:13-cv-11281 (E.D. Mich.), (ECF No. 16-6, PageID.681). Similarly, Plaintiff Dowell's sentencing judge explained: "the guidelines range in this case is very simple . . . life without parole," and "[y]ou deserve life in prison, without the probability of parole . . . ." Sentencing Tr. at 13–14, 17–18, *People v. Dowell*, No. 2003-190533-FC (Oakland Cnty. Cir. Ct. Dec. 15, 2003), *available at Dowell v. Howes*, No. 2:08-cv-11723 (E.D. Mich.), (ECF No. 13-11, PageID.1389–1390, 1393–1394)).

**D.     Relief Requested**

Plaintiffs contend that denying them the opportunity for parole under these circumstances violates their rights under the Sixth, Eighth, and Fourteenth Amendments. Plaintiffs ask the Court to enter a judgment declaring that: (1) their continued incarceration without some meaningful opportunity to obtain release based on rehabilitation violates their constitutional rights; and (2) the Michigan parole statute that excludes from parole consideration persons convicted of a first-degree murder that occurred before March of 2014 violates the Sixth, Eighth, and Fourteenth Amendments. Plaintiffs also ask the Court to enter an injunction compelling Defendants to provide Plaintiffs a meaningful opportunity to obtain release upon review eligibility and then every five years thereafter.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiffs suggest that the imposition of a life sentence without the possibility of parole violates their constitutional rights in several ways. First, they contend that imposing a sentence "without the possibility of parole" is, somehow, an increase in the maximum punishment otherwise provided by the statute. They then leap to the conclusion that it is an additional punishment that is imposed without a supporting jury finding beyond a reasonable doubt. That flaw, they claim, runs afoul of the Sixth Amendment guarantees to trial by jury and proof beyond a reasonable doubt as elaborated upon in the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny.

Second, Plaintiffs argue that life without parole in this circumstance constitutes cruel and unusual punishment in violation of the Eighth Amendment. Finally, Plaintiffs assert that Michigan's statute, which deprives the parole board of jurisdiction over prisoners serving life sentences for first-degree homicide committed before March 4, 2014, violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.

### A. The *Heck* Bar

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. The Supreme Court, however, has limited the availability of § 1983 actions for prisoners in a series of cases, the most pertinent of which is *Heck v. Humphrey*, 512 U.S. 477 (1994). The Sixth Circuit explained the bar that *Heck* places on § 1983 suits brought by prisoners:

> Federal courts have long recognized the potential for prisoners to evade the habeas exhaustion requirements by challenging the duration of their confinement under 42 U.S.C. § 1983, rather than by filing habeas petitions. Consequently, the Supreme Court recognized a "habeas exception" to § 1983 in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973), when it held that suits challenging the fact or duration of confinement fall within the traditional scope of habeas corpus and accordingly are not cognizable under § 1983. The Court

6

> expanded the habeas exception to § 1983 in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997). In *Heck*, the Court determined that, unless a prisoner's conviction or sentence were previously set aside by a separate legal or administrative action, § 1983 would not countenance claims for damages if a finding for the plaintiff would *necessarily invalidate* a conviction or sentence. And in *Balisok*, the Court concluded that a prisoner cannot use § 1983 to challenge prison procedures employed to deprive him of good-time credits when the . . . procedural defect alleged would, if established, "necessarily imply the invalidity of the punishment imposed." 520 U.S. at 648, 117 S. Ct. at 1584.

*Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007) (emphasis in original). Therefore, to the extent that Plaintiffs' complaint challenges the fact or duration of their incarceration or necessarily implies the invalidity of the punishment imposed, it must be dismissed.

Plaintiffs claim that imposing the punishment of life imprisonment without the possibility of parole is unconstitutional. That claim necessarily seeks invalidation of the punishment imposed and, therefore, is *Heck*-barred.

Although the *Heck*-bar appears to be dispositive here, there is an argument that it is not. In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court considered a challenge to parole procedures used to deny prisoners parole. The Court explained application of *Heck* to that situation as follows:

> These cases, [*Preiser*, *Wolff v. McDonnell*, 418 U.S. 539 (1974), *Heck*, and *Balisok*,] taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.
>
> Applying these principles to the present case, we conclude that respondents' claims are cognizable under § 1983, i.e., they do not fall within the implicit habeas exception. Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). *See Wolff*, 418 U.S. at 554–555, 94 S. Ct. 2963. Neither respondent seeks an injunction ordering his immediate or speedier release into the community. *See Preiser*, 411 U.S. at 500, 93 S. Ct. 1827; *Wolff, supra*, at 554, 94 S. Ct. 2963. And as in *Wolff*, a favorable judgment will not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." *Heck, supra*, at 487, 114 S. Ct. 2364. Success for

7

> Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. *See* Ohio Rev.Code Ann. § 2967.03 (Lexis 2003) (describing the parole authority's broad discretionary powers); *Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (C.A.6 1991) (same); *see also* Tr. of Oral Arg. 18 (petitioners' counsel conceding that success on respondents' claims would not inevitably lead to release). Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." *Preiser, supra*, at 489, 93 S. Ct. 1827. Finally, the prisoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. *See Balisok, supra*, at 648, 117 S.Ct. 1584.

*Dotson*, 544 U.S. at 81–82. The Sixth Circuit concluded:

> *Dotson* establishes that when the relief sought in a § 1983 claim has only a potential effect on the amount of time a prisoner serves, the habeas bar does not apply.[3]
> _____
>
> [3] A mirage of tension between *Balisok* and *Dotson* exists. In *Balisok*, the Court focused on whether proving the plaintiff's case would "necessarily imply the invalidity of *the punishment imposed*." 520 U.S. at 648, 117 S. Ct. 1584 (emphasis added). By contrast, the *Dotson* Court's focus was wholly on whether a successful § 1983 action necessarily would affect the length of custody. 544 U.S. at 82, 125 S. Ct. 1242. This apparent tension vanishes once one considers "the punishment imposed" in *Balisok*—a deprivation of good-time credits, which typically have an automatic effect on the amount of time an inmate is incarcerated. *See Balisok*, 520 U.S. at 646, 117 S. Ct. 1584. Accordingly, in both cases, the Court focused on the same issue: the length of custody.

*Thomas*, 481 F.3d at 439.

The *Dotson* decision, especially in light of the *Thomas* panel's interpretation, would seem to leave open the possibility that a challenge to "the punishment imposed" that does not "typically have an automatic effect on the amount of time an inmate is incarcerated" is permissible under § 1983. This Court concludes that there is a qualitative difference between being forever ineligible for parole and being eligible for, but subject to the uncertainty of, parole. That difference warrants application of the *Heck* bar to Plaintiffs' claims because Plaintiffs' challenges necessarily imply the invalidity of the punishment imposed in a way that the petitioners' challenges in *Dotson* and

8

*Thomas* did not. Nonetheless, to the extent that *Heck* does not bar this action, the Court will address the merits of Plaintiffs' claims.

**B.  Sixth Amendment Violation**

Plaintiffs base their Sixth Amendment argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

*Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

The *Apprendi* Court was wrestling with a tension that existed between the constitutional requirement that the state prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged," *In re Winship*, 397 U.S. 358, 364 (1970), and the lesser burden of "preponderance of the evidence" applied to fact-finding by a judge in the exercise of his or her sentencing discretion. That tension was highlighted in cases applying *Winship*. For example, in *Mullaney v. Wilbur*, 397 U.S. 358 (1975), the Supreme Court, in considering whether certain facts were necessary to constitute the crime, seemed to conclude that the determination might depend upon the severity of the punishment that followed the finding of that fact:

9

> Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less "blameworth(y)," *State v. Lafferty*, 309 A.2d, at 671, 673 (concurring opinion), they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in *Winship*.
>
> The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter, differ significantly. Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes.
>
> Moreover, if *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.

*Mullaney*, 421 U.S. at 698. That emphasis—focusing on the consequence of proving or disproving the facts to determine whether the Sixth Amendment compelled the prosecution to prove them to a jury beyond a reasonable doubt—greatly expanded the reach of *Winship* to the point where it might encroach on a state's assignment of the burden of proof for affirmative defenses or sentencing. *See* Ronald Jay Allen, *Mullaney v. Wilbur, The Supreme Court, and the Substantive Criminal Law-An Examination of the Limits of Legitimate Intervention*, 55 Tex. L. Rev. 269, 274 (1977) ("The most troublesome aspect of the *Wilbur* Court's application of *Winship* is that it seems to indicate that the principles of *Winship* have no limit."); *Almendarez-Torres v. United States*, 523 U.S. 224, 241 (1998) ("The upshot is that *Mullaney's* language, if read literally, suggests that the Constitution requires that most, if not all, sentencing factors be treated as elements.").

10

Two years later, the Supreme Court clarified matters, effectively reining in the reach of *Mullaney* in *Patterson v. New York*, 432 U.S. 197 (1977). The court described the "encroaching" reading of *Mullaney* as overly broad:

> *Mullaney*'s holding, it is argued, is that the State may not permit the blameworthiness of an act or the severity of punishment authorized for its commission to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt. In our view, the *Mullaney* holding should not be so broadly read.

*Patterson*, 432 U.S. at 214–15. The Court described its more limited interpretation of *Mullaney* as follows: "*Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Id*. at 215. The *Patterson* Court's "narrowing" of *Mullaney* shifted the focus from the consequence that follows from proving or disproving a fact to whether there is a presumption involved.[1] For example, in *Krzeminski v. Perini*, 614 F.2d 121 (6th Cir. 1980), the Sixth Circuit said that under *Mullaney*, "[w]hat the state may not do is presume that an element of a crime exists as a result of given conduct and then place the burden of showing otherwise on the defendant." *Id*. at 123–24.

The shifted focus was apparent in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986). In *McMillan*, the Supreme Court considered the constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act, which "provide[d] that anyone convicted of certain enumerated felonies [was] subject to a mandatory minimum sentence of five years' imprisonment if the sentencing

---

[1] Sometimes the Justices stray back toward the broader interpretation of *Mullaney*. *See, e.g.*, *Oregon v. Ice*, 555 U.S. 160, 173 (2009) (Scalia, J., dissenting) ("We long ago made clear that the guarantee turns upon the penal consequences attached to the fact, and not to its formal definition as an element of the crime."); *Monge v. California*, 524 U.S. 721, 737 n.7 (1998) (Stevens, J., dissenting) ("In *Mullaney*, we unanimously extended the protection of *Winship* to determinations that go not to a defendant's guilt or innocence, but simply to the length of his sentence.")

11

judge finds, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense." *Id*. at 81. The *McMillan* Court perceived no problem with that approach in part because the Act did not create any presumption as to any essential fact, placed no burden on the defendant, and did not relieve the prosecution of the burden of proving guilt. *Id*. at 83. *McMillan* introduced the distinction between elements of the offense and "sentencing factors." *Id*. at 85–86.[2]

It is against that backdrop that the Supreme Court decided *Apprendi*. Petitioner Apprendi challenged the sentence imposed in the following circumstance:

> A New Jersey statute classifies the possession of a firearm for an unlawful purpose as a "second-degree" offense. N.J. Stat. Ann. § 2C:39-4(a) (West 1995). Such an offense is punishable by imprisonment for "between five years and 10 years." § 2C:43-6(a)(2). A separate statute, described by that State's Supreme Court as a "hate crime" law, provides for an "extended term" of imprisonment if the trial judge finds, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 1999-2000). The extended term authorized by the hate crime law for second-degree offenses is imprisonment for "between 10 and 20 years." § 2C:43-7(a)(3).

*Apprendi*, 530 U.S. at 468–69. The trial judge imposed the sentence enhancement, finding that Apprendi had committed a hate crime.

The *Apprendi* Court noted that "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." *Apprendi*, 530 U.S. at 478 (footnote omitted). Nonetheless, the Court determined that there was nothing in the Nation's history that prevented judges from exercising discretion in sentencing, "taking into

---

[2] *McMillan* did not introduce the idea of sentencing factors, or even the term; rather, *McMillan* introduced the concept that there was a line that divided offense elements from sentencing factors.

12

consideration various factors relating to the offense and offender [when] imposing sentence *within the range* prescribed by statute." *Id*. at 481 (emphasis in original). But the New Jersey Act went beyond that permissible practice to "remove[] the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id*. at 482–83 (emphasis in original, footnote omitted). The *Apprendi* Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S., at 252-253, 119 S.Ct. 1215 (opinion of STEVENS, J.); *see also id*., at 253, 119 S.Ct. 1215 (opinion of SCALIA, J.).

*Apprendi*, 530 U.S. at 490 (footnote omitted).

Plaintiffs contend that the *Apprendi* holding requires this Court to invalidate the "enhanced" penalty of "without the possibility of parole." Plaintiffs are wrong for a couple of reasons. First, "without the possibility of parole" is not some enhanced penalty that is separate and distinct from the penalty of life imprisonment. The maximum penalty—and, indeed, only penalty—for first-degree murder was and is—before and after March of 2014 and before and after Plaintiffs committed their offenses—life imprisonment without the possibility of parole. Prior to March of 2014, part of that mandatory penalty was expressed by the legislature in the murder statute, Mich. Comp. Laws § 750.316, and part of the mandatory penalty was expressed by the legislature in the parole statute, Mich. Comp. Laws § 791.234. After March of 2014, the entirety of the penalty can be found in Mich. Comp. Laws § 750.316. But that mandatory penalty has been the same at all times relevant to Plaintiffs' criminal proceedings.

Second, the imposition of the "without possibility of parole" part of the mandatory penalty depends on exactly the same facts as the "life imprisonment" part of the mandatory penalty. The sentencing judge is not required to find any facts other than the facts that were established beyond a reasonable doubt—by the jury in Plaintiff Dowell's case and by the judge in Plaintiff Richardson's case—when the Plaintiffs were found guilty of first-degree murder. Neither *Apprendi* nor any of its progeny are applicable to Plaintiffs' cases. Their sentences of life imprisonment without the possibility of parole are consonant with Plaintiffs' Sixth Amendment rights because the sentences are based entirely on facts found beyond a reasonable doubt by the appropriate fact-finder. Plaintiffs' Sixth Amendment challenges, therefore, are without merit.

### C. Eighth Amendment

Plaintiffs next suggest that sentences of life imprisonment without the possibility of parole are cruel and unusual punishment. The Supreme Court rejected that suggestion in *Harmelin v. Michigan*, 501 U.S. 957 (1991), where a defendant challenged his Michigan mandatory sentence of life without parole for a drug offense. The Court reasoned as follows:

> Petitioner claims that his sentence violates the Eighth Amendment for a reason in addition to its alleged disproportionality. He argues that it is "cruel and unusual" to impose a mandatory sentence of such severity, without any consideration of so-called mitigating factors such as, in his case, the fact that he had no prior felony convictions. He apparently contends that the Eighth Amendment requires Michigan to create a sentencing scheme whereby life in prison without possibility of parole is simply the most severe of a range of available penalties that the sentencer may impose after hearing evidence in mitigation and aggravation.
>
> As our earlier discussion should make clear, this claim has no support in the text and history of the Eighth Amendment. Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history. As noted earlier, mandatory death sentences abounded in our first Penal Code. They were also common in the several States—both at the time of the founding and throughout the 19th century. *See Woodson v. North Carolina*, 428 U.S., at 289–290, 96 S. Ct., at 2984. There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual

14

becomes so simply because it is "mandatory." *See Chapman v. United States*, 500 U.S. 453, 467, 111 S. Ct. 1919, 1928–1929, 114 L.Ed.2d 524 (1991).

Petitioner's "required mitigation" claim, like his proportionality claim, does find support in our death penalty jurisprudence. We have held that a capital sentence is cruel and unusual under the Eighth Amendment if it is imposed without an individualized determination that that punishment is "appropriate"—whether or not the sentence is "grossly disproportionate." *See Woodson v. North Carolina, supra; Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma, supra; Hitchcock v. Dugger*, 481 U.S. 393, 107 S. Ct. 1821, 95 L.Ed.2d 347 (1987). Petitioner asks us to extend this so-called "individualized capital-sentencing doctrine," *Sumner v. Shuman*, 483 U.S. 66, 73, 107 S. Ct. 2716, 2721, 97 L.Ed.2d 56 (1987), to an "individualized mandatory life in prison without parole sentencing doctrine." We refuse to do so.

Our cases creating and clarifying the "individualized capital sentencing doctrine" have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties. *See Eddings v. Oklahoma*, 455 U.S., at 110–112, 102 S. Ct., at 874–875; *id.*, at 117–118, 102 S. Ct., at 878 (O'Connor, J., concurring); *Lockett v. Ohio, supra*, at 602–605, 98 S.Ct., at 2963–2965; *Woodson v. North Carolina, supra*, at 303–305, 96 S. Ct., at 2991–2992; *Rummel v. Estelle, supra*, 445 U.S., at 272, 100 S. Ct., at 1138.

"The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." *Furman v. Georgia*, 408 U.S., at 306, 92 S. Ct., at 2760 (Stewart, J., concurring).

It is true that petitioner's sentence is unique in that it is the second most severe known to the law; but life imprisonment with possibility of parole is also unique in that it is the third most severe. And if petitioner's sentence forecloses some "flexible techniques" for later reducing his sentence, *see Lockett, supra*, at 605, 98 S. Ct., at 2965 (Burger, C.J.) (plurality opinion), it does not foreclose all of them, since there remain the possibilities of retroactive legislative reduction and executive clemency.[3] In some cases, moreover, there will be negligible difference between life without parole and other sentences of imprisonment—for example, a life sentence with eligibility for parole after 20 years, or even a lengthy term sentence without eligibility for parole, given to a 65–year–old man. But even where the difference is the greatest, it cannot be compared with death. We have drawn the

---

[3] Plaintiffs also might still benefit from retroactive legislative reduction or executive clemency. Mich. Comp. Laws § 791.244.

15

> line of required individualized sentencing at capital cases, and see no basis for extending it further.

*Harmelin*, 501 U.S. at 994–96.[4] Certainly, if a sentence of mandatory life without parole for Harmelin's possession of more than 650 grams of cocaine does not violate the protections of the Eighth Amendment, Plaintiffs' sentences of mandatory life without parole for premeditated murder do not violate the protections of the Eighth Amendment either. The *Harmelin* decision forecloses Plaintiffs' Eighth Amendment claim.

### D.  Fourteenth Amendment Due Process

Plaintiffs finally allege that denying "a meaningful opportunity for release upon demonstrating [their] rehabilitation constitutes a denial of due process . . . ." (Compl., ECF No. 1, PageID.12.) The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiffs do not explain how the prospect of parole is a protected liberty interest. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The Sixth Circuit has explained:

---

[4] Although the *Harmelin* decision included five separate opinions, including partial concurrences and dissents, five justices joined in the part quoted above.

> Although incarceration itself represents a quintessential deprivation of liberty, lawful incarceration does not extinguish all of a prisoner's constitutionally protected liberty. Prison inmates retain what the Supreme Court has characterized as "a residuum of liberty," *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741, 1745, 75 L. Ed. 2d 813 (1983) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S. Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974)), despite the fact that inmates are not at liberty in the normal sense. If state law entitles an inmate to release on parole, moreover, that entitlement is a liberty interest which is not to be taken away without due process. *See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), where the Supreme Court so held in the context of a statute providing that the Nebraska parole board "shall" release parole-eligible inmates unless one of several factors specified in the statute should be found to exist.
>
> The Supreme Court has made it clear that a mere unilateral hope or expectation of release on parole is not enough to constitute a protected liberty interest; the prisoner "must, instead, have a legitimate claim of entitlement to it." *Id*. at 7, 99 S. Ct. at 2104 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)) (emphasis supplied). And only state law can create this "legitimate claim of entitlement;" the federal constitution protects such claims, but does not create them. "There is no constitutional or inherent right of a convicted person to be conditionally released [i.e., released on parole] before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7, 99 S. Ct. at 2104.

*Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth*., 929 F.2d 233, 235 (6th Cir. 1991).

The State of Michigan has not created any right to parole generally and has certainly not created such a right for persons convicted of first-degree murder. In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369

17

(6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Prisoners who are eligible for parole have no protected liberty interest because the discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiffs—who are not even eligible for parole under the discretionary state system—for parole, therefore, implicates no federal right. But, even if the prospect for parole in Michigan's sentencing scheme cannot be taken away without the protections of due process, Plaintiffs received all of the process they were due in their respective criminal proceedings. Plaintiffs fail to state a claim for a violation of their procedural due process rights.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).[5] The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue

---

[5] A court's dismissal of a claim on the basis that it is barred by *Heck v. Humphrey* is properly considered a dismissal under 28 U.S.C. § 1915(g) because it fails to state a claim on which relief can be granted. *See Hunt v. Michigan*, 482 F. App'x 20, 22 (6th Cir. 2012) (finding that a claim barred by *Heck* is properly dismissed for failure to state a claim); *Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (same). Claims barred by *Heck* are properly dismissed without prejudice. *Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999).

Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 14, 2022 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE